IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 15-cv-02735-RBJ

MARK R. DORSEY,

    Plaintiff,

v.

CHS, INC., a Minnesota Corporation,

    Defendant.

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    This matter is before the Court on defendant CHS Inc.'s motion for summary judgment [ECF No. 30]. For the reasons stated below, the motion is denied.

## BACKGROUND

    Mark Dorsey was diagnosed with Parkinson's disease in 2009. *See* Boulder Neurological Associates, Prof. LLC Records at 2, ECF No. 30-1. In March 2012 he underwent deep brain stimulation surgery to ease the symptoms of Parkinson's disease, but this procedure put him at risk of developing severe speech difficulties. *Id.* at 3. Shortly thereafter, Mr. Dorsey began having issues with his speech intelligibility and was diagnosed with dysarthria, a motor speech disorder. Center for Neurorehabilitation Services, P.C. Records at 6, 11, ECF No. 30-2. Despite his trouble speaking, he interviewed with CHS and was hired for an open position. *See* Dorsey Dep. 51:7–13, ECF No. 30-3; Strum Dep. 73:11–74:10, ECF No. 30-5. He sought speech

1

therapy to manage his disorder until he started his new job.  *See* Center for Neurorehabilitation Services, P.C. Records at 11, ECF No. 30-2; Dorsey Dep. at 51:7–13, ECF No. 30-3.

In September 2012 Mr. Dorsey began working for CHS as a nutrition consultant.  Dorsey Dep. at 51:7–13, 65:17–20, ECF No. 30-3.  The official job description summarizes Mr. Dorsey's responsibilities as follows: "Provide salesmanship to an assigned area to obtain customer feed and service orders.  Call on livestock producers in an assigned territory[] to promote and obtain profitable product and service sales.  Services include value-added programs supported by the company."  Nutrition Consultant Job Description at 1, ECF. No. 30-4.  The role's specific duties include:

1) Make farm calls on livestock producers to sell and detail product information along with company services.
2) Provide salesmanship to selected dealers or direct accounts according to sales management and assigned dealership manager.
3) Responsible for individual travel and company promotion expenses to remain within approved budget guidelines.
4) Provide daily route schedule to supervisor.
5) Submit weekly and daily reports to management for review.
6) Report customer complaints to supervisor.  Investigate immediately customer's complaint and provide written information, along with samples.
7) Participate in establishing sales goals for assigned territory for sales management.
8) Assist in developing marketing plans and strategies for assigned territory.

*Id.*  The job description also lists the following "Special Job Characteristics":

- Incumbent must possess good customer service and communication skills, both written and interpersonal.
- Incumbent should possess a sound understanding of agriculture production.
- Incumbent must be motivated to reach and obtain sales goals that are assigned.
- Incumbent must maintain a contemporary understanding of company's feed products.
- Incumbent must possess a high degree of credibility within and among customers, contacts in the field, and company personnel.

2

- Incumbent must possess working knowledge of computer ration formulation processing.

*Id.* at 2. In sum, the position was essentially a sales job that involved a significant amount of verbal communication. Dorsey Dep. 26:5–14, 54:17–22, 70:10–25, ECF No. 30-3.

Over the course of Mr. Dorsey's employment at CHS, his supervisor, Dave Strum, expressed concerns to him about his voice at least once, in the spring of 2013. Strum Dep. 52:21–24, 53:8–54:3, ECF No. 30-5; Dorsey Dep. 150:3–10, ECF No. 31-2. A few weeks later, in April 2013, one of CHS's clients complained that he could not understand Mr. Dorsey and requested a new nutrition consultant. Strum Dep. 40:9–22, ECF No. 30-5; Massey Dec. ¶ 9, ECF No. 30-9. Mr. Strum then spoke with two other clients and learned that they both were uncomfortable having Mr. Dorsey talk to their customers because he was difficult to understand. Strum Dep. 41:11–19, 46:7–47:23, ECF No. 30-5; Haun Dec. ¶ 12, ECF No. 30-10; Klinginsmith Dec. ¶ 11, ECF No. 30-11. However, although Mr. Strum was aware of Mr. Dorsey's speech difficulties, Mr. Dorsey never told Mr. Strum that he had Parkinson's disease or requested an accommodation for his disabilities other than more time to work on his speech problem. Dorsey Dep. 96:10–97:1, ECF No. 30-3; Strum Dep. 80:8–9, 138:6–8, ECF No. 30-5.

In Mr. Dorsey's defense, his sales record was not a cause for concern and was better than that of his predecessor, though the comparison is imperfect because that person worked in the field only part-time. Strum Dep. 45:16–21, 90:6–14, ECF Nos. 30-5, 31-1. Mr. Dorsey also never received a formal performance review, and he was never explicitly warned that he might be terminated if his speech disorder did not improve. Strum Dep. 56:16–57:7, ECF No. 30-5; Dorsey Aff. ¶¶ 10–12, ECF No. 31-3.

Nevertheless, on October 11, 2013 Mr. Strum fired Mr. Dorsey because of his "voice issues." Strum Dep. 136:23–137:19, ECF No. 30-5. A year later, in October 2014, Mr. Dorsey applied for social security disability insurance ("SSDI") benefits, listing October 31, 2013 as the effective date of his disability. Social Security Administration Records at 17, ECF No. 30-13. His application stated that he "cannot enunciate [his] words and speak clearly and loudly enough for people to hear [him]," that he "[c]annot speak in a crowd of people" or "[t]alk clearly, hold a full time job," and that his "disease has incapacitated [him] to the point [he] cannot hold a full time job." *Id.* at 25–26, 30, 32. His claim was approved and he has been receiving disability benefits since April 2014. *Id.* at 3.

On December 16, 2015 Mr. Dorsey filed suit against CHS in this Court. ECF No. 1. Mr. Dorsey's complaint raises four claims for disability discrimination, alleging that CHS violated the Americans with Disabilities Act ("ADA") and the Colorado Anti-Discrimination Act ("CADA") by terminating him based on his disability and failing to provide reasonable workplace accommodations. *Id.*

On February 15, 2017 CHS filed a motion for summary judgment. ECF No. 30. The motion has been fully briefed. *See* ECF Nos. 31, 34.

## STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A

fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court will examine the factual record and make reasonable inferences in the light most favorable to the party opposing summary judgment. *Concrete Works of Colorado, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## ANALYSIS

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees." 42 U.S.C. § 12112(a). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). Similarly, the CADA deems it a discriminatory or unfair employment practice "[f]or an employer . . . to discharge . . . any person otherwise qualified because of disability." Colo. Rev. Stat. § 24-34-402(1). Federal and Colorado law apply the same standards to discrimination claims, so these claims will be analyzed together under the ADA's framework. *See Johnson v. Weld Cnty.*, 594 F.3d 1202, 1219 (10th Cir. 2010) (citing *Colo. Civil Rights Comm'n v. Big O Tires, Inc.*, 940 P.2d 397, 400 (Colo. 1997)).

**A. Disability Discrimination.**

To establish a prima facie case of discrimination under the ADA, a plaintiff must show that he: "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3)

suffered discrimination by an employer or prospective employer because of that disability." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037–38 (10th Cir. 2011) (quoting *Justice v. Crown Cork & Seal Co.*, Inc., 527 F.3d 1080, 1086 (10th Cir. 2008)). CHS concedes the first element of this test, but argues that the second and third elements require entering summary judgment in its favor on all claims. I disagree.

### a. Was Mr. Dorsey Disabled?

First, for the purposes of the instant motion to dismiss, all parties agree that Mr. Dorsey was disabled. CHS appears to read the ADA narrowly, however, so this issue warrants brief discussion. In relevant part, the ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1)(A). "Major life activities" include "performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, *speaking*, breathing, learning, reading, concentrating, thinking, *communicating*, and working." *Id.* § 12102(2)(A) (emphasis added). In determining whether an impairment substantially limits a major life activity, the Court may not consider the ameliorative effects of assistive technology or other mitigating measures. *Id.* § 12102(4)(E).

Mr. Dorsey has Parkinson's disease, but that is not his only disability. Mr. Dorsey's deep brain stimulation treatment caused dysarthria, a disorder that substantially limits his ability to speak and communicate. *See, e.g.*, Defendant's Statement of Undisputed Facts, ECF No. 30 at ¶¶ 2–3, 7–17, 19–20, 24–25; Center for Neurorehabilitation Services, P.C. Records at 6, 11, ECF No. 30-2. Mr. Dorsey's speech impairment thus qualifies as a distinct disability under the ADA.

*Cf. Cooper v. Neiman Marcus Grp.*, 125 F.3d 786, 790 (9th Cir. 1997) (suggesting that an individual's dysarthria alone may be a disability for purposes of the ADA).

### b. Was Mr. Dorsey Otherwise Qualified?

Second, CHS argues that Mr. Dorsey was not qualified, with or without reasonable accommodation, to perform the essential functions of his job. CHS primarily contends that regardless of Mr. Dorsey's actual qualifications, he is estopped from arguing that he could still work based on his successful application for SSDI benefits. That is incorrect. "[P]ursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 797 (1999). Instead, a plaintiff may defeat summary judgment by proffering an explanation "sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" *Id.* at 807.

Mr. Dorsey's explanations suffice to overcome the specter of estoppel. Mr. Dorsey's brief explains that his statements were made in a forum that did not consider the effects of workplace accommodations, and did not imply that he was unable to work even when given reasonable accommodations. ECF No. 31 at 8. He also points out that after being fired from CHS, it was accurate for him to say that he could not "hold a full time job"—but that does not mean CHS lawfully fired him. *Id.* Similarly, Mr. Dorsey's deposition and affidavit in this case are consistent with the possibility that he "might qualify for SSDI under the [Social Security Administration's] administrative rules and yet, due to special individual circumstances, remain

7

capable of 'perform[ing] the essential functions' of [his] job." *Cleveland*, 526 U.S. at 804; *see also* Dorsey Dep. 124:7–15, ECF No. 30-3; Dorsey Aff. ¶ 18, ECF No. 31-3.

On the merits, a reasonable juror could conclude that Mr. Dorsey was qualified, with or without reasonable accommodation, to perform the essential functions of a nutrition consultant. The term "qualified" means "the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). CHS admits that Mr. Dorsey has the requisite skill, experience, and education for his position, and contests only Mr. Dorsey's ability to perform the job's essential functions due to his speech disorder. *See, e.g.*, Strum Dep. 45:16–21, 135:1–11, ECF Nos. 30-5, 31-1.

In identifying a job's essential functions, the Court must consider "the employer's judgment as to what functions of a job are essential," especially as evinced by any "written description" prepared "before advertising or interviewing applicants for the job." 42 U.S.C. § 12111(8). Other relevant considerations include "[t]he amount of time spent on the job performing the function" and "[t]he consequences of not requiring the incumbent to perform the function." 29 C.F.R. § 1630.2(n)(3). In light of these factors, the Court concludes that some of the essential functions of a nutrition consultant include "[p]rovid[ing] salesmanship" to CHS's clients, visiting livestock producers for sales purposes, and displaying "good customer service and communication skills." Nutrition Consultant Job Description, ECF. No. 30-4; *see also* Strum Dep. 123:14–124:14, ECF No. 31-1.

CHS cites many instances in the record documenting Mr. Dorsey's speech impairment, but this evidence does not prove that Mr. Dorsey could not adequately make sales or exhibit "good customer service and communication skills." Indeed, CHS was not concerned about Mr. Dorsey's sales figures, and would not have fired him if he had a normal voice but the same sales numbers. Strum Dep. 45:16–21, ECF Nos. 30-5, 31-1. Nor does CHS allege that, aside from his speech impairment, Mr. Dorsey was unskillful in his customer service or interpersonal communications. And as Mr. Dorsey notes, his voice problems actually may have been an asset if they require a listener to pay closer attention to his words. More importantly, Mr. Dorsey contends that CHS exaggerates the degree of his speech difficulties. For this reason, CHS's argument that "an employer is not required to relieve an employee of an essential job function" is wide of the mark—Mr. Dorsey is not mute. *E.E.O.C. v. Picture People, Inc.*, 684 F.3d 981, 987 (10th Cir. 2012). Although it is a close call, there appears to be a genuine issue for trial on whether Mr. Dorsey was qualified for his old job without a reasonable accommodation.

In any event, there certainly is a genuine dispute about whether Mr. Dorsey was qualified for the nutrition consultant position with a reasonable accommodation. Reasonable accommodations are usually "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). For example, a reasonable accommodation may include the "acquisition or modification of equipment or devices." 42 U.S.C. § 12111(9).

In his brief, Mr. Dorsey points to potential assistive devices that could have improved his speech, including voice-amplifying phones and portable voice-amplifying speakers. ECF No. 31

9

at 14. CHS does not argue that providing these devices would have been unreasonable, or that that these devices would not have enabled Mr. Dorsey to perform the essential functions of his job. *See* ECF Nos. 30, 34. Instead, CHS contends that Mr. Dorsey was not eligible for such accommodations. ECF No. 30 at 14–15; ECF No. 34 at 4. But because the present inquiry concerns only whether Mr. Dorsey "*can* perform the essential functions" of his job with a reasonable accommodation, CHS's argument is misplaced. 42 U.S.C. § 12111(8) (emphasis added). Seeing no relevant rebuttal, the Court holds that a reasonable juror could find that Mr. Dorsey was qualified for the nutrition consultant position with a reasonable accommodation. Summary judgment is thus denied on this question.

### c. Was Mr. Dorsey Discriminated Against Because of His Disability?

Third, CHS argues that it did not fire Mr. Dorsey based on his disability. Disability discrimination can be shown by either direct or indirect evidence. *Perry v. Woodward*, 199 F.3d 1126, 1134 (10th Cir. 1999). "Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1249 (10th Cir. 2002). For example, direct evidence includes "oral or written statements on the part of a defendant showing a discriminatory motivation." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000). Such evidence must be "'sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action." *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004) (quoting *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997)). "If the employer admits that the disability played a prominent part in the decision, or the plaintiff has other direct evidence of discrimination based on disability, the burden-shifting framework [for indirect

evidence] may be unnecessary and inappropriate." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

CHS admits that it fired Mr. Dorsey because of his "voice issues." Strum Dep. 136:23–137:19, ECF No. 30-5. This is direct evidence that Mr. Dorsey was terminated because of his dysarthria. CHS confuses the issues, arguing that Mr. Dorsey was not actually fired due to his disability because it may "terminat[e] disabled employees who are unable to perform the essential functions of the[ir] job[s]." ECF No. 34 at 5 (citing *Picture People*, 684 F.3d at 988). An employee's ability to perform the essential functions of his job is relevant to whether the employee is otherwise qualified, not whether he was fired based on his disability. Accordingly, summary judgment for CHS is denied on this question as well.

### B. Failure to Accommodate.

CHS also argues that it is entitled to summary judgment on Mr. Dorsey's failure to accommodate claims. In its view, Mr. Dorsey had no right to a reasonable accommodation because he did not request such an accommodation and did not inform CHS that he had Parkinson's disease. I am not persuaded.

"To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3). "In general, however, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." 29 C.F.R. pt. 1630 app. § 1630.9. But not always. The ADA defines "discriminate" to include "not making reasonable accommodations to the *known* physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A) (emphasis

11

added). Therefore, an employer is "on notice that an individual needs an accommodation when it knows that an individual requires one, either because that need is obvious or because the individual requests an accommodation." *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1197–98 (10th Cir. 2007). "[W]hen an individual's disability is not obvious, the individual must inform its employer of the disability before the employer can be held liable under the ADA for failing to provide a reasonable accommodation." *Id.* at 1196. In these common circumstances—but these circumstances only—"the employee must make an adequate request, thereby putting the employer on notice." *C.R. England*, 644 F.3d at 1049.

CHS argues that despite the plain text of the ADA and the Tenth Circuit's decision in *Robertson*, the Court should follow the Tenth Circuit's unpublished opinion in *Dinse v. Carlisle Foodservice Prod. Inc.*, 541 F. App'x 885 (10th Cir. 2013). There the court wrote: "More is required to trigger an employer's duty to engage in the interactive process than mere awareness that the employee is disabled; specifically, the employee must make an adequate request for a reasonable accommodation for the disability." *Id.* at 890. But to the extent that *Dinse* can be read to uniformly shield employers from liability absent "adequate request[s]" for accommodation, it runs headlong into *Robertson*'s holding that "[w]hen a disabled individual's need for an accommodation is obvious, the individual's failure to expressly 'request' one is not fatal to the ADA claim." *Robertson*, 500 F.3d at 1197. And to the extent that *Dinse* instead speaks merely to situations where it is "hard for an employer to know whether an employee's difficulties in performing his or her job are caused by a disability or some other factor," *Dinse*, 541 F. App'x at 890 n.4, the opinion says nothing about CHS's duty to accommodate Mr.

12

Dorsey's unambiguous speech impairment. Because *Dinse* either conflicts with binding precedent or is irrelevant, it has no bearing on this case.

Similarly, CHS mistakenly elevates a passing remark in the Tenth Circuit's decision in *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736 (10th Cir. 2013), above its holding in *Robertson*. In *Koessel* the court provided only an incomplete statement of the law, writing: "[A]s a precondition to suit, employees have the burden to request accommodation unless the employer has 'foreclosed the interactive process through its policies or explicit actions.'" *Koessel*, 717 F.3d at 744 (quoting *Davoll v. Webb*, 194 F.3d 1116, 1133 (10th Cir. 1999)). Yet just one sentence before the line that *Koessel* quotes, the *Davoll* court recognized that there are still other circumstances in which employees need not request accommodation. *Davoll*, 194 F.3d at 1133 ("[T]he burden is *typically* on the employee to initiate the interactive process." (emphasis added)). *Koessel* did not concern an individual with an obvious disability, did not mention *Robertson*, and did not purport to challenge the widespread view that an employee with an apparent disability need not make a *pro forma* accommodation request. *See Koessel*, 717 F.3d at 742; *see also, e.g.*, *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012); *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008); *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506 (3d Cir. 2010); *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 846 (8th Cir. 2015). Consequently, the *Robertson* rule survives *Koessel*.

Applying *Robertson* here, the Court holds that a reasonable juror could conclude that the obvious manifestations of Mr. Dorsey's disability triggered the interactive process and entitled him to a reasonable accommodation. It undisputed that CHS knew of Mr. Dorsey's speech impairment. According to CHS, Mr. Strum became concerned about Mr. Dorsey's voice within

13

the first month or two of his employment. Strum Dep. 76:5–8, ECF No. 30-5. Likewise, some of CHS's clients complained that they could not understand Mr. Dorsey. *Id.* at 40:9–22, 42:8–21, ECF No. 30-5; Massey Dec. ¶ 9, ECF No. 30-9; Haun Dec. ¶ 12, ECF No. 30-10; Klinginsmith Dec. ¶ 11, ECF No. 30-11. After about a year of Mr. Dorsey's voice failing to improve, Mr. Strum forwarded his concerns to his boss and CHS's human resources department, and got approval to fire Mr. Dorsey. Strum Dep. 58:18–59:6, ECF No. 30-5. Because Mr. Dorsey's voice issues were thus a "known physical or mental limitation[]," a reasonable juror could find that CHS failed to provide a reasonable accommodation for this disability. 42 U.S.C. § 12112(b)(5)(A).

It is immaterial that CHS did not know Mr. Dorsey's Parkinson's disease was the underlying reason for his deep brain stimulation treatment, which in turn caused his dysarthria. Tellingly, CHS cites no case for the proposition that an employer must know the full chain of causation leading to an employee's readily apparent disability. The ADA itself requires no such thing; instead, an employer must provide reasonable accommodations for qualified employees' "known physical or mental limitations," regardless of their origin. 42 U.S.C. § 12112(b)(5)(A).[1] Besides, CHS's claim of ignorance rings hollow when Mr. Strum admits he knew that Mr. Dorsey was "getting brain stimulations" and "was seeing a speech therapist." Strum Dep. 77:15–20, 80:16–81:2, ECF No. 30-5. Summary judgment on the reasonable accommodation claims is therefore denied.

---

[1] The limited exceptions to this requirement, such as the ADA's carve-out for disabilities related to the illegal use of drugs, do not apply here. *See* 42 U.S.C. § 12114(a).

## ORDER

For the foregoing reasons, Defendant's Motion for Summary Judgment [ECF No. 30] is DENIED.

DATED this 13th day of April, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge